UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MELVIN WILMER DIAZ-CALDERON**, <br><br> Petitioner, <br><br> v. <br><br> **WILLIAM P. BARR, in his official capacity as the Attorney General of the United States, et al.**, <br><br> Defendant. | 2:20-cv-11235-TGB <br><br><br> **ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR HABEAS CORPUS AND DENYING RESPONDENTS' REQUEST TO DISMISS** |

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of the law. U.S. Const. amend. V. § 1. In this case, to ensure Petitioner Melvin Wilmer Diaz-Calderon's deprivation of liberty complied with this bedrock principle, this Court ordered Respondents to appear before an Immigration Judge and demonstrate by clear and convincing evidence: (1) a statutory basis authorizing his prolonged detention, and (2) his dangerousness to the community. Respondents contend that they have satisfied that burden, and therefore request that the Court dismiss the case. Petitioner counters that Respondents have not made a sufficient showing and therefore Petitioner's petition for writ of habeas corpus should be granted. The question is whether Respondents have complied

1

with this Court's Order of September 22, 2020 consistent with Petitioner's constitutional right to due process. Because the Court concludes that Respondents have failed to do so, their motion to dismiss is **DENIED** and Petitioner's motion for relief is **GRANTED**.

## I.    Background

The facts and procedural history of this case are familiar to the Court and the parties. Petitioner is a 24-year-old native of Guatemala and who was born on January 31, 1996. ECF No. 1, PageID.7. Petitioner did not know his biological father, a man who had raped his mother, causing her to become pregnant with him. From there, Petitioner had a difficult upbringing. Petitioner suffered from abandonment by his mother, was neglected and abused by his grandparents, and dropped out of school in the sixth grade to take care of himself. He endured death threats for refusing to join a gang. *Id*. at PageID.7-8. By July 2012 and at the age of 17, Petitioner had had enough. Seeking security and a better life for himself, Petitioner unlawfully entered the United States and found refuge with a cousin in California.

In December 2016, when Petitioner was 20 years old, the Probate Court for Marin County in California appointed Petitioner's cousin as his guardian, finding that Petitioner could not return to Guatemala because of the abuse he suffered. ECF No. 1-3. Based on the Probate Court's findings, in January 2017 Petitioner filed for an "I-360" Special

Immigrant Juvenile status ("SIJ") petition, the approval of which would allow him to remain in the United States and establish a pathway to permanent residency. 8 U.S.C. §§ 1101(b)(1), 1101(a)(7)(J); *see also Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 170 (3d Cir. 2018).[1] But shortly thereafter and unbeknownst to Petitioner, U.S. Citizenship and Immigration Services ("USCIS") altered its policy by stating that it would no longer recognize SIJ findings made by California probate courts when the applicant was between the ages of 18 and 20. ECF No. 35-1, PageID.548. A group of SIJ applicants similarly situated to Petitioner filed a class action lawsuit in the Northern District of California challenging the new policy. *J.L. v. Cuccinelli*, No. 5:18-cv-04914-NC (N.D. Cal. 2019); *see also R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019).

In September 2018, USCIS denied Petitioner's SIJ application based on this policy change. Around this same time, Petitioner had relocated to Michigan. By October 2018, however, the *J.L.* court granted a preliminary injunction, enjoining and restraining DHS and USCIS from taking certain adverse actions against the *J.L.* class members, a class to which—it is undisputed—Petitioner here belongs. Pursuant to

---

[1] Finding that SIJ status reflects the determination of "Congress to accord those abused, neglected, and abandoned children a legal relationship with the United States and to ensure they are not stripped of the opportunity to retain and deepen that relationship without due process."

the *J.L.* court's injunction, the government was not allowed to initiate removal proceedings against *J.L.* class members and was required to provide no less than 14-days-notice to plaintiffs' counsel before the government took any adverse adjudicatory or enforcement action. ECF No. 35-1, PageID.570.

On April 16, 2019, Petitioner was arrested in Michigan for operating a vehicle while intoxicated. ECF No. 19-1. The following day he was convicted and sentenced to two days confinement and a fine. Two days later, ICE arrested Petitioner at the Monroe County Jail and initiated removal proceedings against him. ECF No. 15-1, PageID.337. From that time and up to July 2019, Petitioner remained in ICE custody and made several appearances before an Immigration Judge. *Id.* The Immigration Judge denied Petitioner's request for a custody redetermination, citing what at the time was his "recent pending operating while intoxicated arrest along with other criminal encounters, and also due to Petitioner's apparent lack of relief availability." ECF No. 1-10, PageID.88. At this time, DHS and USCIS failed to notify Petitioner or the Immigration Judge of the fact that Petitioner qualified as a member of the *J.L.* class and that they were enjoined from initiating removal proceedings against him. Unaware of his legal right to stay in the country and suffering from mental anguish under the conditions of incarceration, Petitioner withdrew all of his pending applications and

agreed to voluntary departure. In violation of the *J.L.* injunction, on July 24, 2019 the government removed Petitioner from the United States to Guatemala. ECF No. 9, PageID.9. From July 2019 until late February 2020, Petitioner remained in Guatemala. While there, he says he was beaten by gangs to the point where he required hospitalization. ECF No. 1, PageID.10. In December 2019, the *J.L.* parties learned of the removal of certain class members—not Petitioner—in violation of the court's injunction. In February 2020, having by then learned of Petitioner's unlawful removal as well, the *J.L.* court held DHS and USCIS in contempt for removing the class members and ordered the government to facilitate Petitioner's immediate return.

On February 27, 2020, Petitioner was granted "Significant Benefit Parole," which was valid until March 6, 2020. This authorized his entry into the United States with a form of temporary parole status. ECF No. 15-2. On March 5, 2020, USCIS granted Petitioner's "I-360" SIJ status petition. With his newly granted SIJ petition, Petitioner filed a Motion to Reopen his removal proceedings with the Immigration Judge, arguing that he was no longer inadmissible as originally charged in 2019 and therefore the order of removal should be terminated. Petitioner further relied on 8 U.S.C. § 1255(h), which paroles SIJs into the United States so that they may adjust their status to permanent residency.

On April 29, 2020, the Immigration Judge denied Petitioner's Motion to Reopen because an application for an adjustment of status under 8 U.S.C. § 1255(h) applies only when a visa becomes available. The court also found that Petitioner's parole status had formally expired and that his status therefore reverted from parolee to his original status as an inadmissible individual under 8 U.S.C. § 1182(a)(6)(A)(i), which establishes inadmissibility for being present in the United States without being admitted or paroled. ECF No. 1-10, PageID.89-91. In addition, the Immigration Judge lifted Petitioner's stay of removal. *Id.* at PageID.92.

Petitioner appealed the decision to the Board of Immigration Appeals ("BIA") and sought an Emergency Motion to Stay Removal. ECF Nos. 1-11, 1-12. At the same time, Petitioner filed a verified petition for a writ of habeas corpus and a motion for a temporary restraining order and preliminary injunction in this Court. ECF Nos. 1-2. Petitioner argued that if he were removed before he received a visa and moved for an adjustment of status, he would forfeit his SIJ status and his statutorily-conferred opportunity to apply for permanent residency. *Id*. This Court issued an order temporarily staying Petitioner's removal and scheduled a hearing on the motion. ECF No. 5. Meanwhile, on July 1, 2020, Petitioner became eligible for a visa. Consequently, at a hearing on July 9, 2020, Respondents noted that DHS did not oppose Petitioner's Motion to Reopen his removal proceedings and his request for a stay of removal

with the BIA. ECF No. 27, PageID.470. Respondents also stated that ICE agreed not to remove Petitioner while his BIA appeal was pending. *Id*. Petitioner pointed out that the Court still needed to address the issue of his prolonged detention, arguing that it violated his due process rights. ECF No. 1, PageID.30-36. The Court requested briefing on the question of Petitioner's prolonged detention. *See* ECF Nos. 30-33.

On September 22, 2020, the Court issued its order addressing the question of Petitioner's prolonged detention and whether the government had a statutory basis for detaining him. *See* ECF No. 37. The Court found that it had jurisdiction under 28 U.S.C. § 2241, the habeas corpus statute, because Petitioner was challenging the fact of his detention.

Next, the Court assessed whether this Court's basis for federal jurisdiction was limited by the Immigration Naturalization Act's numerous jurisdiction-stripping provisions. The Court rejected the argument that 8 U.S.C. § 1231(a)[2] could justify the government's detention of Petitioner, and for that reason also concluded that subsection's jurisdiction-stripping provision did not apply. The Court found that Petitioner's final removal order had already been executed on July 2019 and, upon his reentry as a parolee in February 27, 2020, he was not subject to a final removal order. ECF No. 36, PageID.656.

---

[2] Section 1231(a) authorizes detention of aliens subject to a final removal order by the Attorney General of the United States.

The Court then analyzed Respondents' argument that the government could detain Petitioner under 8 U.S.C. § 1225(b) because his expired parolee status reverted him to the status quo as an inadmissible alien. The Court also rejected this argument, noting that § 1225(b) allowed the government to detain aliens in order to determine whether the arriving alien had valid travel documents, whether they intend to apply for asylum, or whether they will be immediately removed from the United States. ECF No. 37, PageID.661 (citing *Pulatov v. Lowe*, No. 1:18-cv-0934, 2019 WL 2643076, at *1 (M.D. Penn. June 27, 2019). In contrast, the government facilitated Petitioner's entrance to the United States pursuant to a court order. ECF No. 37, PageID.662. Further, Petitioner's new status as an SIJ applicant with an available visa and a pathway to legal permanent residency precluded any reversion to a status as an inadmissible alien with a removal order. ECF No. 37, PageID.659.

With the foregoing statutory bases for detention foreclosed, there remained the question of the applicability of § 1226(a), which permits the arrest and detention of aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Court found that section's jurisdiction-stripping provision under § 1226(e) did not apply because Petitioner's circumstances had materially changed since the Immigration Judge had originally denied his bond. ECF No. 37, PageID.667 (citing *Perez-Perez v. Adducci*, 459 F. Supp. 3d 918 (E.D.

Mich. 2020). Petitioner had since been granted SIJ status and has a current visa allowing him to apply for an adjustment of status as a lawful resident. The Court held that § 1226(a) did not apply to Petitioner because, as a result of his circumstances having materially changed, there was "not much left to the underpinnings of the discretionary decision to detain" him. *See Perez-Perez*, 459 F. Supp. 3d at 922-23.

Finding no single statutory provision that authorized Petitioner's detention, this Court ordered Respondents to present clear and convincing evidence before an Immigration Judge to establish both the source of such authority and that Petitioner represented a danger to the community. *See* ECF No. 37. This Court's Order of October 9, 2020 directed the parties to conduct such a hearing before an Immigration Judge within ten business days. Respondents were required to make two showings. *See* ECF No. 37. First, Respondents needed to prove by clear and convincing evidence that they had a statutory basis for Petitioner's prolonged detention. Second, Respondents needed to prove by clear and convincing evidence that Petitioner was a danger to the community. *See id.*

On October 21, 2020, that hearing took place. ECF No. 54-1. But an examination of the hearing's transcript, the parties' status report, and the Immigration Judge's order show that Respondents failed to comply with the requirements of this Court's September 22, 2020 order.

9

Respondents made a single argument during the hearing before the Immigration Judge: that Petitioner was a danger to the community. *See id.* Based on Respondents' argument, the Immigration Judge rejected Petitioner's request for release, finding that the facts contained in a police report detailing Petitioner's arrest for operating under the influence and his possession of various suspicious identity cards showed that he was a danger to the community by clear and convincing evidence. ECF No. 54-2, PageID.956.

After the Immigration Judge's ruling, Petitioner moved, ex parte, for an order granting his release under habeas corpus. *See* ECF No. 49. Respondents opposed that motion and made a separate motion for dismissal of this case for lack of jurisdiction. *See* ECF No. 52. On October 30, 2020, the Court held a hearing on the matter. During the hearing, the Court asked both parties for a status report and for Respondents to address why they failed to identify a statutory basis for Petitioner's prolonged detention during its hearing with the Immigration Judge, as ordered.

## II.    Standard of Review

District courts have jurisdiction over petitions for habeas corpus where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It has been well-established for over 100 years that habeas corpus is the vehicle through

which noncitizens may challenge the fact of their detention. *See Chin Yow v. U.S.*, 208 U.S. 8, 13 (1908). The Supreme Court has more recently recognized the continued viability of the writ in cases involving the detention of noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

As mentioned in the fact section, there are several statutes within the Immigration and Naturalization Act that divest the district court's authority to hear cases in the immigration context, including under § 2241. However, in the Sixth Circuit, it is well-established that district courts retain jurisdiction over due process claims where a habeas petition challenges only the constitutionality of the arrest and detention. *Kellici v. Gonzales*, 472 F.3d 416, 419-20 (6th Cir. 2006); *see also Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005). In *Elgharib v. Napolitano*, the Sixth Circuit reaffirmed this principle, noting that a "habeas petition was properly filed in the district court because it challenged only the government's failure to give notice and the due process implications of the undocumented petitioner's arrest and detention, and because the petition did not address the merits of the underlying order of removal." 600 F.3d 597, 605-06 (6th Cir. 2010). Moreover, courts in this district have found jurisdiction in the context of a habeas petition challenging the fact of detention, including the validity of pre-removal detention. *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (citing *Jennings*

*v. Rodriguez*, 138 S.Ct. 830 (2018)). Further, "§ 1226(e) does not preclude challenges to 'the extent of the Government's detention authority under the statutory framework as a whole.'" *Velasco Lopez v. Decker*, 2020 WL 6278204, at *4 (2d Cir. 2020) (citing *Jennings*, 138 S.Ct. at 841); *see also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (holding that "§ 1226(e) does not preclude 'habeas jurisdiction over constitutional claims or questions of law'"). In addition to the above grounds, a district court retains jurisdiction to enforce its orders even if "it is related to or in connection with an immigration proceeding." *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018).

In the context of an immigration bond hearing, district courts have jurisdiction to review Immigration Judge's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019) (citing *Kharis v. Sessions*, 2018 WL 5809432, at *4 (N.D. Cal. 2018). But a district court sitting in habeas to review due process challenges to immigration bond hearings must proceed carefully, as "it has no authority to encroach upon an IJ's discretionary weighing of the evidence." *Arrellano v. Sessions*, 2019 WL 3387210, at *7 (W.D.N.Y. 2019). Instead, courts must decide whether the IJ "relied upon proof— that as a matter of law—could not establish" that a petitioner is a danger to the community. *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D.

Cal. 2008). For example, the Supreme Court has limited "preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Zadvydas*, 533 U.S. at 691. Detention based on dangerousness, without an adequate showing by the government, "would be antithetical to the Fifth Amendment's Due Process Clause protections." *Hamama v. Adducci*, 2019 WL 1492038, at *2 (E.D. Mich. 2010).

### III.   Discussion
**A. Respondents did not offer any proof or argument identifying a statutory basis for Petitioner's prolonged detention.**

Respondents argue that they satisfied this Court's order and have established a statutory basis for Petitioner's continued detention before an Immigration Judge. ECF No. 52, PageID.783.

As an initial matter, Respondents make much of the Petitioner's procedural history before the immigration judicial system as evidence that he is under lawful detention. But there is a crucial distinction between jurisdiction, which is a court's ability to hear a case, and the existence of a statutory basis for detaining a noncitizen. The Court ordered Respondents to identify the statutory authority that provided the legal basis for Petitioner's detention because, in its Order of September 22, 2020, it took pains to explain why the unusual posture of Petitioner's case and its surrounding facts cast considerable doubt on whether there

*was* such a statutory basis. The Court relies upon—but will not repeat— its detailed reasoning here, both to avoid duplication and because it seems to have fallen on deaf ears. But for Respondents simply to state by fiat that there was jurisdiction before the Immigration Judge does not sufficiently answer the question as set out in the Court's Order of September 22. Respondents' argument amounts to saying somewhat circularly that Petitioner may be detained because he is before the Immigration Court for a custody determination hearing. But the reason he is before the Immigration Court for such a hearing is that this Court ordered him there so that a determination of the statutory basis for detention as well as the Petitioner's dangerousness could be made. Respondents' boot-strapping justifications unduly seek to rely on the fact of Petitioner's detention as the legal reason supporting his detention, but these contentions do not justify the detention itself.

Respondents also point out that Petitioner asked to postpone the hearing establishing the validity of Petitioner's removal. ECF No. 52, PageID.785. There is also a crucial distinction between the issue of Petitioner's removability and whether there is a statutory basis for his detention. In the October 30, 2020 hearing, both parties acknowledged as much when they admitted that Petitioner may be released from custody while he awaits a decision on his removability. So, neither of these arguments advances Respondents' position.

Although this issue was not addressed during the hearing before the Immigration Judge, as the Court had ordered Respondents to do, Respondents now raise several arguments to this Court that Petitioner is validly detained pursuant to the authority of § 1226(a) and therefore this Court lacks jurisdiction. Their argument contends first that, because the BIA has reopened Petitioner's removal proceedings, Petitioner should not be considered as subject to a final order of removal—as Respondents had argued previously—but remains in removal proceedings. *Id.* Second, because the Immigration Judge held a custody redetermination and cited to § 1226(a), Petitioner must be detained pursuant to that statute. *Id.* Third, because Petitioner received a bond hearing, Petitioner has received due process for the purposes of the Fifth Amendment and therefore is no longer entitled to habeas relief. *Id.* at PageID.784.

The Court disagrees. As to Respondents' first argument, it fails to identify any rule stating that the BIA's order to remand Petitioner's case means that he is now detained under § 1226(a). In the October 30, 2020 hearing, Respondents acknowledged that when Petitioner's case was pending before the BIA, it was *unclear* whether Petitioner was then being detained under § 1231 or § 1226(a)—an uncertainty that, in itself, suggests that the detention was in conflict with standards of Due Process that require at a minimum a rational basis for depriving a person of liberty. Respondents fail to point to any statute or principle stating that

remand resolves such uncertainty. It is true that remand brought Petitioner's case back to the Immigration Judge. *See* ECF No. 44-1, PageID.731. But remand, on its own, does not satisfy this Court's requirement that Respondents present a clear and convincing explanation of a statutory basis for detaining Petitioner.

Second, Petitioner appeared for a bond hearing before the Immigration Judge pursuant *to this Court's order*, not § 1226(a). In its September 22, 2020 order, the Court expressed its finding that § 1226(a) did not apply to the current posture of Petitioner's case. *See* ECF No. 37, PageID.662-68. As previously noted, this Court's order conferred enhanced protections for Petitioner by requiring Respondents to demonstrate by clear and convincing evidence a statutory basis for Petitioner's continued detention. Moreover, a review of the transcript of the bond hearing and the briefings reveal that Respondents made no argument and offered no evidence to address this issue. *See* ECF Nos. 54, 54-1, 54-2, 54-7. In Respondents' account of the hearing, they state that "the immigration court identified in its order that it had jurisdiction to order Petitioner's detention." ECF No. 52, PageID.785. Further, Respondents point to the fact that "the parties concurred that the immigration court had jurisdiction." ECF No. 52, PageID.785. But, it bears repeating, jurisdiction to hear a case does not confer a statutory basis to continue to detain a noncitizen, especially one in Petitioner's

circumstance where his final removal order had already been executed, he did not re-enter the United States illegally but rather was paroled back into the United States by court order, and crucially, he has acquired SIJ status, is eligible for a visa, and is currently filing for an adjustment of status as a lawful permanent resident. Assuming but not explaining why § 1226(a) applies to Petitioner fails to satisfy the requirements of this Court's order or the minimum standard of due process. *See* ECF No. 37.

Third, Petitioner's bond hearing insufficiently addressed the Fifth Amendment due process concerns this Court raised in its September 22, 2020 order. Specifically, the Court required Respondents to identify an authority stating that a "pre-removal order of detention under § 1226(a) exists in perpetuity, even after a final order of removal has been entered and executed, the alien has been removed, resides in and suffers abuse in his country of origin, and is later ordered returned to the United States in order to be granted SIJ status." ECF No. 37, PageID.663. Furthermore, Respondents were required to answer the question, even if Petitioner was originally lawfully detained under § 1226(a), how that statute continued to appropriately apply given the materially changed circumstances of Petitioner's life and immigration. ECF No. 37, PageID.667; *see also Perez-Perez*, 2020 WL 2305276, at *2. In the absence of such justifications, the

Court finds that Petitioner's continued detention violates his due process rights.

In short, Respondents failed to comply with the requirement of this Court's September 22, 2020 order that they prove by clear and convincing evidence a statutory basis for Petitioner's prolonged detention. *See* ECF No. 37. That failure is a violation of Petitioner's fundamental due process right not to be deprived of his liberty without being given a clear explanation as to the legal basis for the deprivation.

**B. Respondents did not meet the requirement that they prove by clear and convincing evidence that Petitioner is a danger to the community.**

Having previously concluded that Respondents failed to show what the statutory basis was for Petitioner's continued detention, the Court is presented with a question of whether Respondents complied with the requirement to establish by clear and convincing evidence that Petitioner's release would constitute a danger to the community. Respondents advance two arguments to prove that they met this Court's order. ECF No. 52, PageID.786. First, because the Immigration Judge stated that he was applying the standard of proof required by this Court, Respondents maintain that the burden was therefore satisfied. *Id*. Second, Respondents rely on *In re Siniauskas* to argue that the information contained in a police report is proper evidence that may be

relied upon to satisfy a clear and convincing standard. *Id*. (citing 27 I. & N. Dec. 207, 208-09 (BIA 2018)).

But, as will be discussed in greater detail below, Sixth Circuit jurisprudence would appear to hold that unproven allegations of charges more serious than the offense of conviction should not be considered by the immigration court in granting discretionary relief. *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 712-13 (6th Cir. 2004). Moreover, Respondents' reliance on *Siniauskas* to support the Immigration Judge's decision is unpersuasive. In *Siniauskas,* petitioner was a noncitizen who was being detained under § 1226(a). The petitioner was tasked with establishing that he did not "present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Id*. at 207. The Immigration Judge found that petitioner was a danger to the community and set a bond of $25,000 after examining his *multiple* convictions for driving under the influence. Petitioner appealed, arguing that driving under the influence was not a crime of violence and that his last drunk driving conviction was more than ten years old. *Id*. at 208. The BIA rejected this argument, and instead held that it was "proper for the Immigration Judge to consider not only the nature of a criminal offense, but also the specific circumstances surrounding the alien's conduct." *Id*. The scope of this inquiry may include "both arrests and convictions." *Id*.

In our case, the Immigration Judge concluded that Petitioner was a danger to the community primarily because of allegations in a police report that Petitioner had engaged in super drunk driving and was in possession of several identification cards with variations of his own name as well as what appeared to be several social security cards that were not genuine. ECF No. 54-2, PageID.957-58. The Immigration Judge also opined about the generalized serious dangers to a community from drunk driving and included these concerns in his assessment of the dangerousness of Petitioner. ECF No. 54-2, PageID.958.

As the Court required the heightened standard of clear and convincing evidence to protect Petitioner's due process rights in view of his prolonged detention, it must consider whether the application of that standard in practice was adequate to ensure the protection of those rights, and in particular whether it was consistent with case law concerning how immigration courts are to assess the weight to be given to allegations in police reports that are not necessarily proven by the offense of conviction. Here, the record does not support a finding that the standards applied were consistent with that law. Petitioner has one conviction for driving under the influence. His conviction was for the minimum threshold required for a conviction under that statute—not for the "superdrunk" driving that was described in the police report. The authorities did not pursue the allegation that Petitioner was in

possession of fraudulent identification cards. Petitioner's conviction occurred over a year and a half ago. The state court charged with fashioning a sentence appropriate to the crime, that would adequately protect the interests of the public, imposed a penalty of two days confinement and a small fine. By contrast, Petitioner's total period of immigration detention has stretched to nearly a year in County Jail. Unlike in *Siniauskas*, Petitioner here caused no auto accident, and his prior criminal history involved no egregious pattern of repeated unlawful conduct. Indeed, the *Siniauskas* court contrasted the case before it, where the noncitizen had multiple prior impaired driving convictions, with "a case involving a single conviction for driving under the influence from 10 years ago." *Id.* at 210. It is true that *Siniauskas* stands for the proposition that an Immigration Judge may take account of the nature of a criminal offense and the specific circumstances surrounding the alien's conduct. But it is at best questionable to compare the conduct described in Petitioner's police report and his sole conviction with the multiple convictions and pattern of egregious conduct in *Siniauskas*. While the circumstances of Petitioner's arrest as described in the police report may be considered under BIA precedent, whether those circumstances meet the standard of clear and convincing evidence establishing dangerousness under the applicable case law governing the weight to be given unproven allegations is a separate question. Although not dispositive of the question, it must be noted that the sentencing court in

21

the state drunk driving conviction found a two-day sentence sufficient to account for the full debt Petitioner owed to society for his offense conduct. Under such circumstances, the Court must closely scrutinize whether the use of the unproven allegations in the police report supporting that same crime can be said to have met the standard of clear and convincing evidence that the Petitioner's release would pose a danger to society—in light of the available case law governing how such evidence must be weighed.

As mentioned, Sixth Circuit case law cautions against the use of unproven allegations to support immigration decisions. In *Billeke-Tolosa v. Ashcroft*, the Sixth Circuit held that an Immigration Judge contravenes BIA precedent and therefore commits reversible error when it relies on "consideration of unproven allegations that lack any other corroboration." 385 F.3d at 712-13. In that case, petitioner was a noncitizen who had overstayed his student visa. Petitioner sought discretionary relief and adjustment of status before an Immigration Judge. Petitioner's criminal history revealed that he had twice been accused of sexual misconduct involving young girls. *Id*. at 709. Petitioner denied those charges, maintaining that each accusation was motivated by an intent to harass him. As each of these separate incidents, Petitioner ultimately pleaded guilty to lesser charges that did not admit to the sexually abusive conduct. *Id*. But the Immigration Judge rejected

petitioner's request for discretionary relief, focusing on the allegations that he had sexually abused young children. *Id*. at 712. The BIA affirmed. The Sixth Circuit was concerned by the Immigration Judge's denial of discretionary relief because of allegations of child sex abuse that did not result in convictions. In reversing the Immigration Judge and BIA, the court emphasized that BIA precedent prohibits consideration of unproven allegations. *Id*. at 711-13 (citing *In re Catalina Arreguin De Rodriguez*, 21 I. & N. Dec. 38 (BIA 1995)).

An examination of BIA case law shows that it permits the use of police reports but suggests that facts not proven by the conviction should be assigned little weight. *Arreguin* involved a noncitizen who had applied for a waiver of inadmissibility. 21 I. & N. Dec. at 38. The Immigration Judge denied her request after considering an arrest report, noting the petitioner's prior arrest for having a minor role in smuggling aliens. Petitioner appealed and the BIA ruled that the report deserved "little weight" because the arrest did not lead to a conviction and there was no corroboration of the report's underlying allegations. *Id*. The BIA reversed the Immigration Judge and granted the petitioner's application. *Id* at 43.

A review of several cases from other federal Circuit Courts of Appeal interpreting *Arreguin* further affirm the rule that arrests that did not result in a conviction for the stated allegations should be given little weight. In *Henry v. I.N.S*, the First Circuit held that when immigration

courts assess whether to grant discretionary relief, "it will accord virtually no weight to an arrest record remote in time and unsupported by corroborating evidence." 74 F.3d 1, 6-7 (1st Cir. 1996). Likewise, in *Toomer v. Att'y Gen. United States*, the Third Circuit found that "such reports do not deserve 'substantial weight' in an equitable balancing analysis." 810 Fed. Appx. 147, 149 (3d Cir. 2020). And in the Seventh Circuit, the Court of Appeals reached the same conclusion, holding that the immigration court failed to follow its binding precedent when it gave significant weight to uncorroborated arrest reports, and granting the petitioner's request for judicial review. *Avila-Ramirez v. Holder*, 764 F.3d 717 (7th Cir. 2014).

In considering how to apply this law, the Court must also recognize that in the context of § 1226(a) bond hearings, Immigration Judges "have broad discretion in deciding the factors that he or she may consider." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). In *Guerra*, petitioner was a noncitizen who was found to be removable for remaining in the United States longer than his period of authorized stay. *Id*. at 37. Petitioner bore the burden of establishing "to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Id*. at 38 (citing *In re Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999)). The Immigration Judge denied petitioner's release and the BIA affirmed,

holding that it was proper to consider "evidence in the record of seriously criminal activity, even if it had not resulted in a conviction." *Id*. at 40. *But see Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) ("*Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered.").

In trying to determine which evidentiary standard would most effectively protect Petitioner's due process rights, the Court is faced with a difficult question. On one hand, Sixth Circuit case law prohibits immigration courts from considering unproven allegations. On the other, immigration case law permits some consideration of police reports in connection with bond hearings. Here, as previously noted, the Court has raised doubts as to whether in light of Petitioner's current status, he may be detained under § 1226(a). These questions, as discussed above, were never addressed by the Immigration Judge. But the purpose of a bond hearing under § 1226(a) is "to ensure an alien's presence at proceedings." *In re Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009). And a noncitizen with a greater likelihood of being granted relief to stay in the United States has a strong motivation to appear for a hearing. *In re Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987). Instead, Petitioner's status is more akin to that of the petitioner in *Billeke-Tolosa*. *See Billeke-Tolosa*, 385 F.3d at 708. Petitioner has SIJ status and has applied for an adjustment of status

after he became eligible for a visa. Petitioner has a viable path to lawful residency in this country. Furthermore, the holdings in *Guerra* and *Arreguin* are not inconsistent. Both cases allow the consideration of police reports or other allegations that did not result in a conviction. *Arreguin* merely states that such allegations should be given little weight, and that standard is consistent with the holdings of the four federal Circuit decisions cited above. *See Arreguin*, 21 I. & N. at 41. In contrast, while allowing consideration of police reports, *Guerra* does not articulate any standard for balancing the proper weight to be given to such evidence. *See Guerra*, 24 I. & N. at 41. Accordingly, the police report upon which Respondents rely was properly considered by the Immigration Judge, but the standard required by the case law, that unproven allegations should be assigned little weight in determining Petitioner's dangerousness, was not applied correctly.

To have relied so heavily on a matter that must only be given little weight as the basis for meeting a "clear and convincing" standard of evidence is not consistent with due process. Because a review of the record and admission from both parties show that the Immigration Judge did not apply the correct standard by giving substantial weight to unproved allegations in Petitioner's police report in denying his bond, the Court must conclude that Petitioner was not accorded sufficient due process protections. *See* ECF Nos. 49, 53, 54, 54-2.

## IV. Conclusion

The Court concludes that because Respondents failed to offer any argument identifying the statutory basis for Petitioner's detention and failed to apply the correct evidentiary standard in Petitioner's bond hearing, any further continuation of Petitioner's prolonged detention would be a violation of his rights to due process of the law. For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Respondents' motion to dismiss for lack of jurisdiction is **DENIED**. ECF Nos. 48, 52.
2. Petitioner's petition for writ of habeas corpus is **GRANTED**. ECF No. 49.
3. Petitioner's motion for an order compelling immediate release is **GRANTED**. ECF No. 49.
4. Respondents shall release Petitioner forthwith.
5. Petitioner shall comply with any and all orders of USCIS or the Immigration Court to appear for immigration proceedings.
6. Petitioner's removal is **STAYED** until Petitioner's adjustment of status process is completed.

**IT IS SO ORDERED.**

Dated: November 10, 2020

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on November 10, 2020.

s/Karri Sandusky on behalf of
Amanda Chubb, Case Manager